No. 42,877

EDITH BUEHNE, *Appellee*, v. FRANK H. BUEHNE, *Appellant*.

(378 P. 2d 159)

Opinion filed January 26, 1963.

*Emmet A. Blaes*, of Wichita, argued the cause, and *Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda,*

*Loren B. Corliss,* and *Charles M. Cline, Jr.,* of Wichita, and *J. J. Mangan,* of Dodge City, were with him on the briefs for appellant.

*Roy H. Wasson,* of Wichita, argued the cause, and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from orders of the district court overruling the defendant's motions to vacate and set aside a decree of divorce and other relief granted the plaintiff pursuant to a default judgment entered in her favor on September 27, 1961.

The principal question presented is whether a default divorce judgment rendered after the first day of the term without notice to counsel for the defendant who appeared specially attacking the jurisdiction of the district court and who otherwise made no general appearance or filed any pleadings in the case, was a violation of Rule No. 48 of the Supreme Court relating to procedure of district courts. It is conceded that if the judgment as obtained was a violation of the rule, it constituted an irregularity within the meaning of G. S. 1949, 60-3007, *Third,* and the district court should have set it aside. Hence, it is essential that pertinent proceedings be detailed.

On July 27, 1961, the plaintiff, Edith Buehne, commenced an action against the defendant, Frank H. Buehne, for a divorce, division of property, alimony, custody of their minor children, and for child support. She alleged she was a resident of Sedgwick County and that the defendant, a resident of Ford County, was guilty of gross neglect of duty and extreme cruelty. On the same day, the district court entered an *ex parte* order *pendente lite* for the support of the wife and the minor children of the parties. A copy of that order together with the summons was personally served upon the defendant in Ford County the day after the action was commenced. The answer day was August 28, 1961.

On August 10, 1961, after having failed to make payments as directed by the court, a contempt proceeding was filed and an order was entered by the court directing the defendant to appear on August 21, 1961, to show cause why he should not be found in contempt of court.

On that date, August 21, 1961, the defendant and his attorney together with counsel for the plaintiff, appeared before the Honorable Howard C. Kline, judge of division No. 2, the acting preliminary and assignment judge, who assigned the contempt proceeding for

hearing before Judge Tom Raum, judge of division No. 7. At that hearing, counsel for the defendant orally announced he had that day filed a motion to quash service of summons, to vacate and set aside the order *pendente lite*, and the order to appear for indirect contempt of court. The motion alleged that the defendant was appearing specially and for no other purpose, and that the court was without jurisdiction of either the person of the defendant or the subject matter of the action for the reason that the plaintiff was not a resident of Sedgwick County at the time she filed her petition on July 27, 1961 (G. S. 1949, 60-1502), and that the action was brought in a county other than where the defendant resided at the time or was summoned. The motion carried the names of counsel as follows: Jim Mangan, First National Bank Building, Dodge City, Kansas, and Jochems, Sargent & Blaes, 500 Farmers & Bankers Life Building, Wichita 2, Kansas, by Harry L. Hobson, Attorneys for defendant. Counsel stated that he could not get into the contempt hearing because it would put him in court generally, and that since the defendant was appearing specially only, he would like to personally and for the record ask the court to continue the contempt hearing until the motion to vacate be heard. Judge Raum stated he would continue the contempt hearing but could not hear the motion to vacate and directed counsel to Judge Kline for disposition of the motion. Judge Kline set the motion to quash and vacate for hearing on September 11, 1961, and advised counsel that any statements made would not in any manner be regarded as constituting a general appearance in the case. The court further advised counsel that the defendant should in some manner provide funds for living expenses of his children and the plaintiff. Counsel stated that the defendant had arranged to deposit $500 in a bank upon which the plaintiff could write checks but that he did not want to pay any money through the clerk of the district court since doing so might constitute his entry of a general appearance.

On September 11, 1961, and approximately two weeks after the answer date, counsel for the parties together with the defendant appeared before the Honorable B. Mack Bryant, judge of division No. 4, the regular preliminary and assignment judge, who assigned the motion to quash and vacate for hearing before Judge Kline. Before the motion was heard by Judge Kline on September 11, counsel for the defendant filed with the clerk of the district court a precipe for subpoena of two witnesses, which was signed by

"Harry L. Hobson, Attorney for defendant." At the hearing, Judge Kline inquired whether Mr. Mangan would appear and Mr. Hobson stated that he was there alone on behalf of the defendant. The contested hearing involved oral testimony of three witnesses and a number of stipulations. After a full hearing, the court overruled the motion to quash and vacate. Thereafter, counsel for the plaintiff asked that the court hear the contempt citation and Judge Kline stated he was dismissing the contempt proceeding without hearing so that the defendant and his counsel could have time to determine whether they would make a general appearance. The court inquired whether the defendant would file an answer, or if he desired additional time in which to plead. Counsel advised they would decide whether they would come into the case generally and that he had no statement to make it regard thereto.

On the following day, September 12, 1961, counsel for plaintiff prepared two journal entries on the court's rulings and presented them to counsel for the defendant. Counsel approved the journal entry of the order overruling the special appearance and motion to quash service of summons, but would not approve the journal entry with respect to the dismissal of the contempt proceeding, stating that he was afraid it might put him in court generally. The record discloses that at that time counsel for plaintiff inquired of counsel for the defendant if they had any idea whether they would come into the case generally and make a general appearance and file an answer, or whether they desired to consult relative to a settlement. Counsel for the defendant advised him that they would decide what, if anything, they wanted to do and if they decided to come into the case, they would do so. Counsel for plaintiff stated that if counsel for the defendant cared to do anything further with the case or desired to discuss it, to let him know within the next few days. Counsel for plaintiff then presented the two journal entries to Judge Kline for his signature and advised the court of counsel's refusal to approve the one journal entry and his reason therefor. The court refused to sign the unapproved journal entry and suggested that counsel get together on the matter. Counsel for the defendant prepared a journal entry which specifically stated that the defendant and his counsel were in court by special appearance on the motion to quash and that the court had announced it would not find the defendant guilty of contempt and had canceled the accusation without prejudice to subsequent contempt proceed-

ings. The journal entry was approved by counsel for the parties and was signed by the court.

On September 27, 1961, counsel, together with the plaintiff, appeared before the Honorable B. Mack Bryant and made a statement for the record that the date on which the defendant might answer the plaintiff's petition expired August 28, 1961; that no appearance of record had been made by the defendant or any attorney on his behalf; that no pleadings had been filed except the special appearance and motion to quash and vacate which had been overruled; that more than 60 days had elapsed since the action was commenced, and plaintiff asked that she might proceed with the hearing of her action. With the approval of the court the plaintiff offered her evidence and rested. The court rendered judgment granting the plaintiff a divorce upon the grounds alleged in her petition; awarded her the care, custody and control of the parties' two minor children; made a division of certain real property owned by the parties; awarded the defendant all the money and personal property, and awarded the plaintiff alimony in the sum of $35,000, together with the household furniture and one automobile.

On October 5, 1961, the defendant entered his general appearance and filed a motion to vacate and set aside the judgment rendered on September 27, 1961, or in the alternative for a new trial, which was supported by affidavits of two of his attorneys. The motion alleged that the default judgment was entered in violation of Rule No. 48 of the Supreme Court relating to procedure of district courts and that the firm of Jochems, Sargent and Blaes, of Wichita, Kansas, and Jim Mangan, of Dodge City, Kansas, appeared as counsel of record for the defendant and that no notice was served by plaintiff prior to the taking of judgment; that the judgment was obtained by misstatements to the court with respect to appearance of counsel of record for the defendant; that it was obtained by "irregularity" (G. S. 1949, 60-3007, *Third*); that unavoidable casualty and misfortune prevented the defendant from defending against the action; that the defendant had a meritorious defense to all of the allegations in the petition; that he did not own all of the property alleged to belong to him, and that the division of property set forth in the decree of divorce was grossly and manifestly unfair and indicated a misrepresentation by plaintiff of the extent of the property owned by the parties. The alternative motion for a new trial alleged statutory grounds. On the same date,

the defendant filed his notice of intention to appeal to the supreme court from the judgment granting the divorce pursuant to G. S. 1949, 60-1512.

On October 24, 1961, the defendant's motion to vacate and set aside the default judgment was presented to the court, fully argued, and overruled. In disposing of the motion, the court found,

"That the defendant never made a general appearance in the case. That no attorneys ever appeared in said case for the defendant, generally, until the motion for a new trial and to vacate the judgment herein was filed."

On November 2, 1961, the defendant appealed to the supreme court from the order of September 11, 1961, overruling his motion to quash service of summons and vacate certain orders; from the decree of divorce and judgment by default on September 27, 1961, and from the order of October 24, 1961, overruling his motion to vacate and set aside the judgment, or in the alternative, for a new trial.

On January 9, 1962, the defendant, apparently desiring a rehearing of his motion of October 5, 1961, to vacate and set aside the default judgment, and in an effort to submit additional evidence to the court, filed what he denominated "Defendant's Second Motion to Vacate And Set Aside Judgment, Or In The Alternative, For a New Trial." In support of that motion, the defendant attached nine affidavits thereto.

On January 11, 1962, the parties appeared before Judge Bryant and partially argued the motion. Upon plaintiff's request for a continuance for the purpose of investigating the defendant's affidavits and filing counter affidavits, the hearing was continued to April 27, 1962, when it was fully argued to the court which found "that after examining the affidavits submitted by both parties, and hearing the argument of counsel, that said motion should be and the same is hereby overruled." On June 5, 1962, the defendant filed an amended notice of appeal including as a grounds thereof the order overruling his second motion to vacate the default judgment.

Counsel for the defendant contend that when they signed the special appearance motion attacking the jurisdiction of the court, when they signed the praecipe for subpoena, when they approved the two journal entries, when their names appeared on the "Docket Sheet" prepared by the clerk of the district court which showed their special appearance, and when they appeared in person in three separate divisions of the district court, they became the defendant's attorneys "of record" within the meaning of Rule No.

48, and in the absence of a motion for default judgment and service of the notice required by the rule, there was a want of adherence to the prescribed rules of procedure and the default judgment of July 27, 1961, was "irregularly" obtained (G. S. 1949, 60-3007, *Third*), and should have been vacated and set aside. Rule No. 48 reads:

"In all causes or matters in which adverse counsel has appeared *of record*, no default judgment shall be rendered except upon motion and the giving of at least a three days' notice to such adverse counsel of the hearing thereof: *Provided*, This rule shall not apply to the first day of a regular term of court fixed by the statute." (G. S. 1949, 60-3827; 188 Kan. XXXV). (Emphasis supplied.)

Counsel argue that the rule makes no reference to, nor distinction between a general appearance or a special appearance; that it pertains only to appearance of lawyers; that lawyers do not appear either generally or specially—they just appear; that it is litigants who are before the court either generally or specially attacking the jurisdiction; that lawyers are officers of the court in either instance, and that the rule was designed for the protection of members of the Bar—not for the litigants.

The vital question presented is: Did counsel for the defendant appear "of record" in any proceeding prior to the entry of the default judgment? We think not. Generally speaking, under our procedure a court does not acquire jurisdiction of the person of a defendant unless the action is commenced in the proper court and summons is issued and served upon him, or unless he enters a voluntary appearance in the action. But whether voluntary or by compulsion as a result of the summons, an appearance is either general, or special. A general appearance is an appearance whereby the defendant submits his person to the jurisdiction of the court (6 C. J. S., Appearances, § 12, p. 17), and such appearance must be made by the party himself or a duly authorized representative acting for him (3 Am. Jur., Appearances, § 3, p. 783; 6 C. J. S., Appearances, § 12, p. 17). A special appearance, while not regarded as an appearance at all for most purposes, accords only the right to have the jurisdictional question passed upon and no other matter or question can be raised or considered; it is the defendant's assertion that the case is not in court at all, and as to him it does not in fact exist. (*Branner v. Chapman*, 11 Kan. 118; *Simcock v. National Bank*, 14 Kan. 529; *Green v. Green*, 42 Kan. 654, 22 Pac. 730; *Thompson v. Greer*, 62 Kan. 522, 64 Pac. 48; *Bishop v. Foley*, 103

Kan. 190, 173 Pac. 289; *Sage v. Oil Country Specialties Mfg. Co.*, 138 Kan. 501, 509, 27 P. 2d 542.) It has been said that a special appearance has the effect of keeping the defendent from being in default for want of a pleading until the court has ruled thereon, but it does not give him the same right with respect to notice of subsequent proceedings, copies of pleadings, and the like, as does a general appearance (3 Am. Jur., Appearances, § 4, p. 783; 6 C. J. S., Appearances, § 22b, p. 66).

While the purpose of Rule No. 48 is to protect adverse counsel of record from a default judgment rendered without notice to such counsel, it is clear that the sole purpose of the defendant's motion was to attack the jurisdiction of the court. It is evident from the face of the motion that counsel's authority from the defendant was not to appear generally for him in the case but was limited to a special appearance. The subsequent proceedings had in connection with the motion bear this out. With diligent effort counsel jealously guarded their special appearance before the court and cautiously approved the journal entries disposing of it and the contempt proceeding and refused to require the defendant to deposit with the clerk of the district court support money he provided for his minor children and the plaintiff on the ground that it might constitute a general appearance in the case. Thus, as stated in *State, ex rel., v. School District*, 140 Kan. 171, 34 P. 2d 102, counsel for the defendant adopted in the district court, and here, Zekle's attitude when watching Huldy peelin' apples:

"He stood a spell on one foot fust, Then stood a spell on t'other."

The case of *Woodward v. Woodward*, 189 Kan. 320, 369 P. 2d 347, was a divorce action involving the application of Rule No. 48, and we think what was there held is controlling. Paragraphs 1 through 5 of the syllabus read:

"A default judgment may be entered against a defendant where he fails to plead over after his special plea to the jurisdiction of the court is overruled or denied.

"Where the jurisdiction of the court over the person of a defendant is challenged under a special appearance made pending the action, and before judgment, the same is not a general appearance, and a judgment entered by default is valid.

"The terms and conditions upon which parties are allowed to file pleadings when they are in default are matters resting in the sound discretion of the trial court.

"When a party to an action deliberately puts himself in default, so far as he is concerned the action may be tried and judgment may be rendered at any time thereafter.

"Rules 48 and 49 of the Supreme Court (G. S. 1949, 60-3827) apply only when an appearance of record has been made by counsel for a party in the action, and have no application to a special appearance questioning the jurisdiction of the court."

Counsel for the defendant contend that the Woodward case is inapplicable because the defendant wife appeared in her own behalf without counsel. The distinction is immaterial. The fact that the defendant wife did not employ counsel and that she filed a special appearance solely for the purpose of attacking the jurisdiction of the court as to her person and the subject matter of the action does not lessen the binding effect of rules of this court applicable to procedure of district courts. She was a party litigant and had the right to appear in her own behalf, and had counsel for the plaintiff sought to take a default judgment he would have been required, had it not been for the special appearance, to serve the notice as provided in Rule No. 48.

The case of *Anchor Savings & Loan Ass'n v. Dysart*, 189 Kan. 147, 368 P. 2d 293, is relied upon by counsel for the defendant as authority that Rule No. 48 is here applicable. That case involved an order of the district court refusing to vacate a default mortgage foreclosure judgment. The name of the appellants' attorney was endorsed only on the court's trial docket. No motion, pleadings or defenses were filed. It was said that Rule No. 48 was to be construed as having application only to situations where adverse counsel had caused his name to be entered in the appearance docket in the office of the clerk of the court or had filed some motion or pleading for and on behalf of the parties represented by him. It was held that minutes made by the judge of the district court upon his trial docket constituted no part of the record of the case and that since counsel had filed no motions, pleadings, or defenses, the appellants were not represented by counsel of record when the default judgment was rendered. By contrast, counsel here point to the fact that they filed a motion, a praecipe for subpoena and personally appeared in at least three separate divisions of the district court, and vigorously contend they were counsel of record for the defendant. We think the Anchor Savings case is not helpful to them. First, there is nothing in the record which suggests that the names of counsel for the defendant were entered on the ap-

pearance docket in the office of the clerk of the district court (G. S. 1949, 60-3802), and the fact that the clerk made up a so-called "docket sheet" for the convenience of the preliminary and assignment judge, which showed their special appearance, is not the equivalent to the entry of the names of counsel on the appearance docket. Secondly, and most important, the appellants in the Anchor Savings case did not appear specially attacking the jurisdiction of the district court. No contention was made that they appeared specially, either in person or by counsel. On the contrary, they contended their attorney appeared generally and "of record."

As previously indicated, the only purpose for a special appearance is to object to the jurisdiction of the court and such an appearance does not give the court jurisdiction of the defendant. It is clear to us that Rule No. 48 has no application where a defendant appears in court with his attorney under a special appearance attacking the jurisdiction of the court and thereby drapes about him the mantle of immunity from the court's jurisdiction. An attorney appears in court as his client appears in court and counsel may not deny jurisdiction in one breath and assert they are counsel of record in the next. It would be the height of folly to say that the defendant appeared specially but that counsel appeared generally, or what is commonly known as "of record" which is a general appearance.

In view of the foregoing and while Rule No. 48 does not so expressly state, we are of the opinion that the only permissible construction of the words "of record" as used therein is that they were intended to apply to counsel who appears for a client in court as a result of personal service of summons or by a voluntary appearance—in other words, to a litigant who has entered a general appearance, and they have no application to counsel who appears specially for the defendant attacking the jurisdiction of the district court.

Had the motion to quash and vacate been granted, there would have been no action in which to appear. If it were denied, as it was, the defendant, being in court by virtue of the summons served upon him, would have been required to answer or otherwise plead, and whether he did so by compulsion as a result of the summons, as distinct from a voluntary appearance, would not alter his appearance as then being general and of record in the case. Counsel would then have been counsel "of record" within the purport of Rule No.

48. But the defendant made no general appearance and filed no pleadings. He deliberately put himself in default on September 27, 1961, when the plaintiff's case was heard and judgment rendered. So far as he was concerned, the plaintiff was authorized to try her action and the default judgment was not "irregularly" obtained. (*Woodward v. Woodward*, supra.)

We have examined, not overlooked, other contentions made by the parties, particularly that the plaintiff was not a resident of Sedgwick County on July 27, 1961, when she filed her petition. Our task is not to determine whether we would have reached the same conclusion as did the district court, but, rather, to ascertain whether there was substantial evidence to sustain the finding, inherent in the district court's order overruling the defendant's motion to quash and vacate, that the plaintiff was a resident of Sedgwick County, and in so doing, review all the evidence in the light favorable to the affirmative finding. This point is controlled by what was said and held in *Gleason v. Gleason*, 159 Kan. 448, 155 P. 2d 465. In the opinion the court said:

". . . It will be noted that the statutory definition uses the word 'adopted' and 'intention.' The use of these words in such a definition means that whatever tribunal has the task of determining whether a particular place was the residence of a particular person at a particular time must reach a conclusion as to the mental processes of such a person at such a time. The trial court in such a case examines all the surrounding facts and circumstances, including declarations of the person claiming residence. *It is no different from any other question of fact except that intention must be considered. . . .*" (l. c. 450, 451.) (Emphasis supplied.)

Considering the court's journal entry which overruled the defendant's motion to quash and vacate, it is evident that the district court considered the intention of the plaintiff in establishing a home for herself and her children in Sedgwick County, and that in ruling upon the motion, the court considered all of the evidence introduced at that hearing.

Also, we have examined the defendant's contention that the district court abused its discretion in refusing to vacate the default judgment and grant a new trial in term time when the judgment was procured by irregularity and false testimony. We shall not burden our reports with contentions advanced by the defendant on this point. Nor will we detail the evidence adduced in the various affidavits and the counter affidavits. It is sufficient to say that after carefully considering all of the evidence of the parties we are convinced, as the district court obviously was, that the proceedings were

all regular and legal and that the judgment rendered was proper, just, and fair to the parties.

After a full consideration of the record, the rules of this court, and the law covering the points discussed, we are of the opinion the judgment of the district court should be affirmed.

It is so ordered.

PARKER, C. J. and PRICE and SCHROEDER, JJ., dissent.