**TRADERS BANK OF KANSAS CITY,**
Plaintiff-Respondent,

v.

**CHEROKEE INVESTMENT CO., INC.,**
Defendants-Appellants.

**No. WD 32976.**

Missouri Court of Appeals,
Western District.

Oct. 12, 1982.

As Modified Nov. 9, 1982.

William J. Fleischaker, Joplin, for defendants-appellants.

Stephen G. Scholl, Michael D. Strohbehn, Kansas City, for plaintiff-respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

Plaintiff Bank sues on a $900,000 promissory note executed by defendant Cherokee Investment Co., Inc. and guaranteed by thirteen of its shareholders who were originally also defendants in this lawsuit. A judgment by default was entered against

Cherokee. It filed a motion to set aside the default judgment, and, when the motion was overruled, took this appeal. We reverse.

On January 14, 1981, the Bank filed its petition in this case in Jackson County against Cherokee and the thirteen individual stockholders. Some of the individual defendants filed timely motions challenging jurisdiction and venue, and others of those individual defendants asked legislative continuances. Roberts and Fleischaker, a law firm located in Joplin, Missouri, filed such motions on behalf of its clients Patterson, Mr. and Mrs. Burrows, Mr. and Mrs. Bazzano and Mr. and Mrs. Derfelt. No pleading was filed on behalf of Cherokee.

On March 24, 1981, the Bank dismissed voluntarily as to all individual defendants. As a matter of course, notice of that dismissal was received by Roberts and Fleischaker in their capacity as attorneys for the individual defendants named above. Promptly thereafter, on March 26, 1982, Roberts and Fleischaker filed by mail on behalf of Cherokee a motion for enlargement of time within which to plead and also at the same time filed a motion to dismiss on behalf of Cherokee based on jurisdictional and venue grounds. On March 30, 1981, the Bank filed a motion to strike the Cherokee motions on the ground that those motions did not comply with the rules of the 16th Judicial Circuit in that the Cherokee motions were not accompanied by written suggestions in support.

The next thing that happened procedurally was the entry of judgment on April 3, 1981, in favor of the Bank and against Cherokee in the amount of $800,000 representing the alleged principal balance remaining unpaid on the note, $66,965.56 interest, and $5,000 for attorneys' fees. Roberts and Fleischaker did not learn of that entry of judgment until May 6, 1981, when they received from the court clerk a statement for costs. Roberts and Fleischaker then obtained a copy of the judgment through a local law firm in Kansas City, and on June 2, 1981, they filed a motion on behalf of Cherokee to set aside the April default judgment. The petition was based on the theory of a writ of error corum nobis and also upon the theory of procedural irregularities.[1] The motion was accompanied by suggestions and also an affidavit in which Mr. Jack Fleischaker explained how it came about that no pleading had been timely filed on behalf of Cherokee. His affidavit explains that on February 17, 1981, a meeting occurred between the various defense counsel, and Mr. Fleischaker left that meeting with the opinion that another lawyer, Mr. Charles Buchanan, would file a pleading on behalf of Cherokee. After receiving the dismissal by the Bank against the individual defendants, Fleischaker immediately inquired of Buchanan as to whether or not he had filed a pleading for Cherokee and received a negative answer. After verifying that no one had filed any pleading on behalf of Cherokee, Fleischaker then proceeded to prepare motions for Cherokee which were filed as aforesaid on March 26, 1981.

A hearing was held by the trial court on the motion to set aside the judgment, and the court thereafter overruled the motion.

On this appeal from the order last mentioned, Cherokee contends that the trial court erred in refusing to set aside the default because: (1) the court had jurisdiction to do so; (2) the judgment was entered pursuant to procedural irregularities; and (3) the circuit clerk failed to give notice of the default judgment within 30 days after entry as required by Rule 74.78. As to Cherokee's last point just mentioned, the Bank argues that Cherokee suffered no prejudice from lack of prompt notice of the entry of default judgment, and therefore that procedural defect should be disregarded pursuant to Rule 74.30. We agree with the Bank in this respect, and no reliance will be made on that particular defect in our reversal of the trial court's declination to set aside the default judgment.

1. Cherokee has abandoned the theory of corum nobis and argues on this appeal solely the theory that the judgment should be set aside because of irregularities appearing on the face of the record.

## I.

### *Jurisdiction to Set Aside the Default*

It is true, as the Bank continually stresses, that the trial court generally retains jurisdiction to change its judgment for a period of only 30 days. Rule 75.01. However there are a number of exceptions to this general rule. *Kranz v. Centropolis Crusher, Inc.,* 630 S.W.2d 136 (Mo.App.1982) and cases there cited. One of these exceptions permits the trial court to set aside a judgment for procedural irregularities at any time within three years. Rule 74.32.

■ The Bank contends that this exception should not apply because Cherokee discovered that the default judgment had been entered within 40 days thereafter, and it therefore had ample time within which to have filed an appeal from the granting of the default judgment. This argument by the Bank has been answered squarely by *Blackmore v. Blackmore,* 639 S.W.2d 268, decided by the Missouri Court of Appeals, Eastern District, on August 31, 1982. In *Blackmore,* a defendant attempted to appeal directly from a default judgment. The appeal was dismissed on the ground that the defendant was required to first file a motion to set aside or vacate the default judgment: "The general rule is that an appeal may not be taken from a default judgment unless there was a prior motion in the trial court. [citing authority]. The reason for the rule is to allow the trial court an opportunity to pass on a ground which it may not have previously considered. [citing]." [2]

## II.

### *Procedural Irregularities*

The classic definition of what constitutes an irregularity sufficient to warrant setting aside a judgment has been repeated most recently in *State ex rel. Div. of Family Serv. v. Oatsvall,* 612 S.W.2d 447 (Mo.App. 1981) which states that relief is available for irregularities patent on the records of the underlying proceedings which "go to lack of adherence to some prescribed rule or mode of proceeding and consists either in omitting to do something that is necessary for due and orderly conduct of the suit or doing it at an unreasonable time or in an improper manner." The record in this case clearly shows procedural irregularities within that definition.

■ First and foremost among the irregularities here was the failure of the trial court to dispose of the motions still pending at the time the default judgment was entered on April 3, 1981. Cherokee had filed a motion for enlargement of time and also a motion to dismiss the petition. The Bank had responded with a motion to strike Cherokee's two motions. No action was taken by the court with respect to any of those three motions, and all of them remained pending and undisposed of on April 3, 1981. Not only was no such action taken then, but none has ever been taken since that date.

A number of Missouri cases hold that it is improper to enter a default judgment at a time when one or more motions remain undisposed of. Thus in *Anspach v. Jansen,* 229 Mo.App. 321, 78 S.W.2d 137 (1935), the defendant's lawyer filed an answer and a motion for security of costs, but then died. The case was listed for trial on December 11. The defendant spoke to another lawyer about representation but failed to hire that lawyer. On the trial date the plaintiff appeared, offered evidence and took judgment. Thereafter defendant moved to set aside the judgment. Following *Steamboat Osprey v. Upton Jenkins,* 9 Mo. 643 (1845), the appellate court held that the effect of the motion for security for costs was to suspend all further proceeding until the motion was disposed of by the trial court and that therefore the default judgment should be set aside.

---

2. The Bank calls attention to the fact that Cherokee filed a motion in this court for leave to file an appeal direct from the default judgment out of time. That motion was by this court over-ruled. For the reason set forth in *Blackmore,* that request was unnecessary and to grant that leave would have been improper.

Similarly, in *Carpenter v. Alton R. Co.,* 148 S.W.2d 68 (Mo.App.1941) the case was at issue and docketed for trial on November 6. Defendant on November 6 filed a motion for change of venue in open court. The case was then continued until November 8. On the latter date, the defendant did not appear and judgment was entered by default, no ruling being made on the motion for change of venue. The appellate court held this to be reversible error:

"We do not intend herein to determine the question of whether or not the application for change of venue should have been granted. As we view the record, that question is not before us. The trial court did not grant the change, nor did he refuse it. We think the record discloses that he failed to consider it. At any rate, the application was not disposed of. What we have said in preceding paragraphs has been said merely to demonstrate that the application for change of venue was properly before the court for its judicial consideration and disposition.

. . . .

In this case the court should have ruled the application before proceeding to hear the case.

The court erred in rendering final judgment against defendant at a time when there was pending, undisposed of, an application for change of venue. It follows that the defendant's motion to set aside the default judgment should have been sustained."

The ruling in *Carpenter* was carried a step further in *Cannon v. Nikles,* 235 Mo. App. 1094, 151 S.W.2d 472 (1941). In *Cannon,* the case was at issue and set for trial on the week of March 11. On March 13 defendant filed a motion for change of venue. The case remained on the active trial docket until April 1, when evidence was heard and a default judgment entered. Although there was no showing that the trial judge had any actual knowledge that a motion for change of venue was pending and undisposed of, as had been the case in *Carpenter,* the appellate court in *Cannon* held that the trial judge had constructive knowledge because of the presence of the motion in the court files and that there was procedural error calling for setting aside of the default judgment:

"The record clearly discloses culpable negligence on the part of appellant in failing to present his motion to the trial court. However, regardless of the aforesaid fact, the question as to whether or not there was error committed by the court in rendering default judgment before passing upon the motions, is not answered. This is so for the reason that the fact of appellant's neglect can not correct a procedural error, if any, on the part of the court.

. . . .

In the case at bar it could easily have been ascertained that the defendant had an answer and an application for change of venue on file. The court after acquiring the actual status of the record could as rightfully act with sound discretion as to matter of gross negligence in failure of presentation by defendant of his application, and under the same rules as would justify the rendering of a default judgment could have ruled adversely on defendant's application and thus by orderly and legal procedure accomplish the same purpose that was accomplished erroneously.

We feel it well to admonish that appellate courts look with favor on trial on merits and with disfavor when default judgments are not set aside.

Judges of both trial and appellate courts should keep in mind that they were lawyers too once and in the exercise of sound discretion must realize that lawyers are sometimes afflicted with procrastination and, to an end of justice, we should avoid, if at all compatible with orderly procedure, visiting the sins of the advocate upon the head of the client."

*Goddard v. Pollock,* 37 Cal.App.3d 137, 112 Cal.Rptr. 215 (1974) is even closer on the facts. In *Goddard* the defendant did not file an answer or any other pleading within time, and the plaintiff moved for default judgment. Then defendants filed

notice of a motion to quash service. Thereafter judgment by default was entered. Defendant's motion to set aside the default was overruled. On appeal, it was held that the default judgment should have been set aside:

"'[I]t is generally recognized that an untimely pleading is not a nullity, and it will serve to preclude the taking of default proceedings unless it is stricken.' The proper procedure is for the plaintiff to move to strike the defendant's untimely pleading and, if the court grants such relief, thereafter proceed to obtain the entry of the defendant's default...."

*See also* cases collected in an annotation, 73 A.L.R.3d 1250 Section 8(b) (1976) from which it appears that generally an application for leave to plead out of time is such an "appearance" as to require notice to be given before any default may be entered.[3]

■ The Bank argues that the three motions pending on April 3, 1981, should be ignored because the trial court had no choice except to strike Cherokee's motions, for the reason that Cherokee had not submitted suggestions in support of its motions and therefore had violated Rule 33.5 of the 16th Judicial Circuit. That argument overlooks the following pertinent provision of Rule 33.5-1: "Failure to file clear concise suggestions *shall be grounds for refusing the relief requested.*" (Emphasis added). Under that provision, it was a purely discretionary matter whether or not to strike the Cherokee motions. Furthermore, if the court had decided to strike the motions because of failure to file suggestions, then Cherokee would still have had opportunity to refile the motions and remedy the defect by appending suggestions in support, or it could have filed a motion requesting leave to file an answer.

■ The Bank further argues that it should be deemed that the trial court overruled the Cherokee motions by implication when it entered the default judgment. This argument contravenes the authorities already discussed which hold that pending motions must be disposed of expressly and cannot be treated as having been overruled sub silentio.

Furthermore, if it could be said that the default judgment overruled the Cherokee motions by implication, that would merely create another procedural problem, namely that no notice of such action was ever given to Cherokee. Rule 74.78 provides that upon the entry of an order, the clerk shall serve notice of the entry "upon every party affected thereby who is not in default for failure to appear and who was not present in court in person or by attorney at the time of the entry of such order of judgment. If such notice is not given, said order or judgment shall be set aside for good cause shown upon written motion filed within 6 months of the entry of the order or judgment." Perhaps it could be said that Cherokee was "in default for failure to appear" so far as the principal petition was concerned.[4] However that may be, Cherokee was not in default with respect to the three pending motions. If the court did in fact act on those motions (by implication), then Cherokee was entitled to notice of that action under Rule 74.78. The failure to

---

**3.** The Bank cites *Buehne v. Buehne,* 190 Kan. 666, 378 P.2d 159 (1963) as standing for an exception to the rule stated. The alleged exception would be made if the belated appearance was only for the limited purpose of contesting jurisdiction. The 4 to 3 decision in *Buehne* deals with a distinctly different problem and does not support any such exception.

**4.** *But see* Annot. 73 A.L.R.3d 1250 Sec. 8(b) (1976). *See also Courtin v. McGraw Construction Co.,* 639 S.W.2d 286, decided by the Missouri Court of Appeals, Eastern District, August 31, 1982, where the defendant was in default and an interlocutory judgment of default was entered. Thereafter the defendant did file an answer, but the court nevertheless proceeded to a final judgment. Although the Court of Appeals affirmed, it indicated that the result would have been different if the defendant had filed his answer before the interlocutory judgment had been entered:

"Defendant first contends that the trial court erred in proceeding by default, as an answer had been filed before final judgment was rendered. Defendant would enjoy a better position for argument if interlocutory judgment on default under Rule 74.045 were rendered subsequent to answer being filed."

give such notice would be ample ground for setting aside the default judgment for irregularity.

Aside from all of the foregoing, and even if Cherokee may have been technically in default for failure to make a timely appearance so as not to be entitled to notice under Rule 74.78, nevertheless it was entitled to notice as a matter of constitutional due process. As stated in the case *Estate of Sympson,* 577 S.W.2d 68, l.c. 71–72 (Mo.App. 1979):

> "Even in the absence of a specific requirement for notice by statute or.court rule, constitutional considerations make notice imperative to parties who will be directly affected by the order. This point is strongly stated in a leading case, *Hoppe, Inc. v. St. Louis Public Service Co.,* 361 Mo. 402, 235 S.W.2d 347 (Mo. banc 1951), where the court held in part as follows:

> > "It may be conceded that no provision of that statute required a notice to be here given. But the requirement of reasonable notice goes deeper than that'

> > \*   \*   \*   \*   \*   \*

> > 'The question instantly before us goes deeply into the underlying principles of due process. In our system of jurisprudence reasonable notice to a litigant (where there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of the trial court's freedom of action in the exercise of its judicial discretion. In 66 C.J.S. Notice Sec. 14, p. 652, it is said: "While the view had been expressed that usually notice of summary action

is not essential, it has been held or recognized that, where an act to be performed by a court or other authority will especially affect a particular individual, reasonable notice should be given to him, so that he may appear and be heard, even though the giving of notice is not required by statute, and that, where a statute confers power on a judicial or an administrative agency to render a judgment or make an order affecting rights of persons or property, and no provision is made for notice, the court will require a reasonable notice." '

> That rule has been frequently and uniformly followed. [citing cases] . . ."

The facts of this case certainly bring this situation within that rule. The Bank by its petition was seeking a very large sum of money. Cherokee was actively trying to defend through counsel and had filed a challenge to the court's jurisdiction and venue. In addition, Cherokee claims to have a defense to the note on the merits; although the details of the defense are not given, the suggestions filed in support of the motion to set aside the default judgment states: "Defendant Cherokee has a valid defense to this action by Traders and the individual defendants have a valid defense thereto." Even if there were no other matters for inquiry, the face of the default judgment shows that there were payments made on the principal of the note and there could be question as to the amount of those payments; additionally, there could be question as to the proper computation of interest and almost certainly there could be a dispute as to the reasonable amount to be awarded for attorneys' fees. It violates the instinct for fair play to say that default judgment should be entered under such circumstances without any notice whatsoever to Cherokee, at a time when it had motions pending and undisposed of.

The Bank states in its brief in this court: "If Cherokee Investment Company, Inc. had legitimate defenses to venue and personal jurisdiction or a bona fide defense on the merits of the case, this appeal might be a

different question." But that is precisely the question which remains as yet unanswered. Whether or not Cherokee does have legitimate defenses has never been determined; it has never had an opportunity to establish such defenses. The default judgment should be set aside and the motions which were pending on April 3, 1981, should now be set for hearing.

The judgment is reversed and the cause remanded.

All concur.