[No. 25399-9-I.    Division One.    July 22, 1991.]

DAVID A. LEEN, *Respondent,* v. CHRIS DEMOPOLIS, *Appellant.*

474

*Ronald Jay Meltzer,* for appellant.
*Steven W. Hale,* for respondent.

COLEMAN, J. — Chris Demopolis appeals the order denying his motion for an order vacating entry of a default judgment and confirming the order of default. Demopolis argues that the trial court erroneously (1) made factual determinations based upon conflicting affidavits; (2) found that Demopolis's actions prior to the entry of the default order did not constitute an appearance before the court; (3) entered an award that exceeded the relief requested in the complaint; and (4) modified its decision without permission from the appellate court. We affirm.

On October 31, 1988, attorney David Leen filed a summons and complaint against Chris Demopolis in King County Superior Court. Leen claimed that Demopolis owed him $11,500 pursuant to a written contract for professional services rendered. Leen asked for a judgment for $11,500, plus reasonable attorney fees of $500 if the matter was uncontested or a greater amount if the matter was contested.

Leen advised Demopolis that he was pursuing a legal action to collect his fees. Demopolis acknowledged over the telephone that he had received the summons and complaint and agreed to sign an acceptance of service.

On January 22, 1989, because Demopolis had not yet returned the signed form, Leen went to Demopolis's residence at 7013 Linden Avenue North in Seattle. Demopolis was not there, but a former client of Leen's, Marvin Johnson, was in the yard. Johnson indicated that he saw Demopolis daily and agreed to deliver the summons and complaint for Leen.[1] The following day, Johnson called Leen's office and indicated that he personally handed the summons and complaint to Demopolis. On January 24, 1989, Johnson signed an affidavit of service.

---

[1] Johnson lived next door to Demopolis in an apartment building owned by Demopolis.

When more than 20 days passed without any response from Demopolis, Leen moved for an order of default. On February 14, 1989, the trial court entered findings and conclusions and an order of default. A judgment was entered in favor of Leen for $14,552.82. On February 17, 1989, Leen mailed Demopolis a copy of the default judgment.

On November 17, 1989, Leen applied for a writ of execution to seize Demopolis's personal property. A sheriff's sale was scheduled for January 2, 1990. On November 22, 1989, Demopolis called Leen and demanded that the default judgment be vacated.

On December 11, 1989, Demopolis filed a motion to vacate the default judgment. The motion was based upon declarations of Demopolis and Daniel Peterson. Demopolis claimed that he had not properly been served with the summons and complaint prior to the entry of the order of default. He claimed that he found a document entitled "Complaint for Monies Due" in the mailbox at one of his business offices on February 6, 1989. He said that on February 10, 1989, he filed with the court a document entitled "Memo to Court on Failure of Process". Demopolis also claimed to have delivered a copy of the memorandum to David Leen's secretary on February 10, 1989. He said that he first learned about the order of default late in the summer of 1989 when he discovered that it was an encumbrance listed on a real estate title report. Daniel Peterson's declaration also stated that Demopolis had delivered a copy of the "Memo to Court on Failure of Process" to Leen's secretary.

On December 19, 1989, the trial court entered an order confirming the default judgment entered on February 14, 1989. Demopolis filed a notice of appeal from the order confirming the default judgment on December 29, 1989. On January 3, 1990, Leen filed a motion for a supplemental award of attorney fees and costs. Leen based his

request upon his contract with Demopolis and upon CR 11. On January 11, 1990, the trial court entered findings and conclusions and granted Leen a supplemental judgment of $6,398.83 based upon its conclusion that Demopolis had violated CR 11. On February 21, 1990, Demopolis was granted a request to amend his notice of appeal to include an appeal from the supplemental judgment.

We first consider whether the trial court erred when it denied Demopolis's motion to vacate the default judgment when there were conflicting affidavits regarding service of process.

CR 55(c)(1) allows default judgments to be set aside in accordance with CR 60(b). Under CR 60(b),

> ▮n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
> . . . .
> (5) The judgment is void;
> The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

CR 60(b)(1), (5).[2]

The procedure for vacating a judgment is as follows:

> (1) *Motion.* Application shall be made by motion filed in the cause stating the grounds upon which relief is asked, and supported by the affidavit of the applicant or his attorney setting forth a concise statement of the facts or errors upon which the motion is based, and if the moving party be a defendant, the facts constituting a defense to the action or proceeding.

CR 60(e)(1). If a judgment is void for want of jurisdiction, no showing of a meritorious defense is required to vacate the judgment. *Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces*, 36 Wn. App. 480, 486, 674 P.2d 1271 (1984).

---

[2] The other reasons for which a judgment may be vacated are not relevant to this appeal.

■ Generally, a decision to grant or deny a motion to vacate a default judgment is within the sound discretion of the trial court. *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). The decision will not be disturbed on appeal unless the trial court abused its discretion. *White*, at 351. Courts, however, have a nondiscretionary duty to vacate void judgments. *Brenner v. Port of Bellingham*, 53 Wn. App. 182, 188, 765 P.2d 1333 (1989); *but see Kennedy v. Sundown Speed Marine, Inc.*, 97 Wn.2d 544, 548, 647 P.2d 30 (although judgment was void for lack of jurisdiction, plurality of Supreme Court found that trial court did not abuse its discretion when it denied the motion to vacate the judgment. "Because the court was so badly divided, the Kennedy opinion cannot be considered a firm precedent." 4 L. Orland, Wash. Prac., *Rules Practice* § 5713, at 145 (3d ed. Supp. 1991)), *cert. denied*, 459 U.S. 1037, 74 L. Ed. 2d 603, 103 S. Ct. 449 (1982).

■■ When a default judgment has been entered based upon an affidavit of service, the judgment should be set aside only upon convincing evidence that the return of service was incorrect. *Allen v. Starr*, 104 Wash. 246, 247, 176 P. 2 (1918). An affidavit of service that is regular in form and substance is presumptively correct. *Lee v. Western Processing Co.*, 35 Wn. App. 466, 469, 667 P.2d 638 (1983). The burden is upon the person attacking the service to show by clear and convincing proof that the service was improper. *Allen*, at 247; *McHugh v. Conner*, 68 Wash. 229, 231, 122 P. 1018 (1912).

■ Demopolis argues that the trial court erroneously decided the issue of whether he was served with the summons and complaint when there were conflicting affidavits. Demopolis, however, did not appear at either of the hearings on his motions to vacate the default judgment and made no request to present live testimony. He did not timely object to the trial court deciding the issue

upon affidavits.[3] A litigant may not remain silent regarding a claimed error and later raise the issue on appeal. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979); *Grange Ins. Ass'n v. Ochoa*, 39 Wn. App. 90, 92, 691 P.2d 248 (1984). Demopolis, therefore, waived his argument that the fact dispute regarding service could not be resolved on conflicting affidavits.

Furthermore, Demopolis failed to meet his burden to show by clear and convincing proof that the service by Marvin Johnson was improper. *See Allen*, at 247. The trial court had before it the affidavit of service from Marvin Johnson stating that he personally delivered the summons and complaint to Demopolis at 11 a.m. on January 23, 1989. Johnson's affidavit creates the presumption that service upon Demopolis was correct. *See Lee*, at 469. Other evidence in the record corroborates Johnson's affidavit. A copy of a telephone message taken at about noon on January 23 to Leen from Johnson states that "Mr. Demopolis has received your papers — could you send [Johnson] his $25 check[.]" An entry in Leen's fee statement regarding Demopolis's case indicates that on January 24, 1989, another lawyer in Leen's office traveled to 7013 Linden to obtain the affidavit of service from Johnson.

Demopolis, to support his claim that service was improper, submitted his own declaration stating that he

---

[3]The trial court specifically found:

"10. Defendant's counsel argues that the court cannot decide whether he was properly served without considering live testimony. However, the defendant did not appear at the hearing on either of his motions to vacate the default judgment so that he could give live testimony, nor did his counsel attempt to subpoena Mr. Johnson for either of the hearings to testify, nor was a request made to present live testimony under CR 43." Findings of fact and conclusions of law entered December 31, 1990.

The trial court specifically concluded:

"4. Defendant waived any right he might have had to present oral testimony on the issue of personal service by failing to either appear himself or subpoena witnesses to testify and by failing to make a CR 43 request to present live testimony at either of the hearings on his motions to vacate." Findings of fact and conclusions of law entered December 31, 1990.

found a copy of the complaint, without the summons, in the mailbox at one of his business addresses. He also submitted a certificate signed by two persons who claimed to have been with Demopolis at a restaurant during the time that Johnson said that he had served the summons and complaint. Demopolis himself, however, did not attest that he was at the restaurant when Johnson served the summons and complaint. This evidence was not clear and convincing proof that the service by Marvin Johnson was improper.

We next decide whether the trial court erred when it failed to vacate the default judgment although Demopolis had not been given notice of the motion for default.

Under CR 55(a)(3), "[a]ny party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." Demopolis argues that the document that he filed with the trial court entitled "Memo to Court on Failure of Process" constituted an appearance entitling him to notice of the motion for default. The memorandum was filed with the court before the default judgment was entered, but had not yet been placed in the court's file when the judgment was entered.

Under RCW 4.28.210 "[a] defendant appears in an action when he answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his appearance." "A notice of appearance, if made, shall be in writing, shall be signed by the defendant or his attorney, and shall be served upon the person whose name is signed on the summons." CR 4(a)(3).

Demopolis's "Memo to Court on Failure of Process" did not constitute an appearance under RCW 4.28.210. It was not an answer or a demurrer or an application for an order.[4] It failed as a notice of appearance because it was

---

[4]If Demopolis intended the memorandum to serve as an application for an order quashing service, it was inadequate because it failed to set forth the relief sought, as required by CR 7(b)(1).

not served upon Leen as required by CR 4(a)(3).[5] The memorandum, therefore, was not an appearance under RCW 4.28.210.[6]

■ Demopolis argues, however, that courts generally consider a wide variety of actions to constitute an appearance under CR 55, relying upon *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989) and *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 349 P.2d 1073 (1960). Demopolis, however, misses a critical distinction in the authorities upon which he relies.

Whether a party has "appeared" for purposes of the rule requiring notice prior to an entry of default is generally a question "of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for

---

[5]The trial court was entitled to find, as it did, that neither Leen nor his counsel had been served with the "Memo to Court on Failure of Process". Demopolis claimed to have personally delivered the memorandum to Leen's office, accompanied by Daniel Peterson, who claimed to have had an appointment with Leen. Peterson said that he waited 15 minutes before leaving because Leen had not appeared. Leen, however, presented evidence showing that he was an instructor at a Washington State Bar Association seminar in Spokane on the day Peterson and Demopolis claimed to have delivered the memorandum. It is highly unlikely that Leen would have scheduled an appointment on a day when he knew he would be out of town or that Leen's staff would have allowed Peterson to wait 15 minutes without advising him that Leen was away. Furthermore, the receptionist in Leen's office swore that she did not recall anyone coming to see Leen that day and that if anyone had, she would have told him that there was no point in waiting because Leen was out of town. She also attested that had anyone left a pleading with the firm, she would have stamped it and given it to Leen's secretary for calendaring in accordance with the strict policy of the firm. Leen's secretary also swore that if she had received the memorandum, she would have a record of it. The memorandum, however, was not in her files and she had no record of receiving it until Leen obtained a copy from the court file. Leen's secretary also swore that she knows Demopolis well and clearly would have remembered if he had given her any papers on February 10, 1989.

[6]Leen acknowledged that had he been served with the memorandum, Demopolis would have been entitled to notice of the default motion. The memorandum, however, did not include Demopolis's address as required by CR 11. Because Demopolis disputed that the 7013 Linden Avenue address was his residence and a proper place for service, his failure to include his address on the memorandum was critical. If Leen had received a copy of the memorandum and had tried to send a notice of the default motion, he would not have known where to send it.

affirmative action from the court, *constituting a submission to the court's jurisdiction."*

(Italics ours.) *Gage*, at 161 (quoting Annot., *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment*, 73 A.L.R.3d 1250, 1254 (1976)). At common law, any action by the defendant, except an objection to jurisdiction, that recognizes the case as in court, amounts to a general appearance. *Dlouhy*, at 721. Because an appearance for the sole purpose of attacking the court's jurisdiction does not submit the defendant to the jurisdiction of the court, cases cited in the American Law Reports article to which *Gage* referred held that the defendants had not "appeared" and hence were not entitled to notice of the motions for default. *See Austin v. State ex rel. Herman*, 10 Ariz. App. 474, 459 P.2d 753 (1969); *Buehne v. Buehne*, 190 Kan. 666, 378 P.2d 159 (1963); *Woodward v. Woodward*, 189 Kan. 320, 369 P.2d 347 (1962).

> It has been said that a special appearance has the effect of keeping the defend[a]nt from being in default for want of a pleading until the court has ruled thereon, but it does not give him the same right with respect to notice of subsequent proceedings, copies of pleadings, and the like, as does a general appearance[.]

*Buehne*, at 673.

Washington law is consistent with the rule stated in *Buehne*. The statements of general principles in *Dlouhy* and *Gage* reflect that a challenge to jurisdiction is not an appearance entitling a defendant to notice of a motion for default. *Dlouhy*, at 721 (at common law, any action by defendant, *except challenge to jurisdiction*, amounts to general appearance); *Gage*, at 161 (act by defendant constituting submission to court's jurisdiction is an appearance).

At most, the "Memo to Court on Failure of Process" challenged the court's jurisdiction, which did not entitle Demopolis to notice of the motion for default. The trial

court, therefore, did not err when it granted the motion for default even though Demopolis was not given notice of the motion.

We now consider whether the default judgment is void to the extent that it exceeded the specific amounts mentioned in the complaint.

■ Under CR 54(c), "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Based upon a party's right to due process, a default judgment in excess of the relief requested in the complaint is void to the extent that it differs from the complaint if the defendant was not given notice and an opportunity to be heard. *In re Marriage of Leslie*, 112 Wn.2d 612, 617-18, 772 P.2d 1013 (1989); *Allison v. Boondock's, Sundecker's & Greenthumb's, Inc.*, 36 Wn. App. 280, 282, 673 P.2d 634 (1983), *review granted*, 101 Wn.2d 1001, *review dismissed*, 103 Wn.2d 1024 (1984). Default judgments that are void may be set aside in accordance with CR 60(b). CR 55(c)(1); *Leslie*, at 618. However, a ground for vacating a judgment under CR 60(b) will not be considered for the first time on appeal. *Allison*, at 284 (when appellant contended that judgment was void but did not challenge the trial court's findings and conclusions, appellate court refused to consider the issue on appeal).

In the prayer for relief of Leen's complaint, he asked for a judgment as follows:

> 1. That this court enter a judgment against defendant in the amount of $11,500.00, representing the reasonable value of services provided to the defendant.
> 2. That this court award reasonable attorney fees pursuant to a written contract in the sum of $500 if this matter is not contested, and a greater amount if this matter be contested.
> 3. That this court award any further relief that may be equitable and just.

The trial court awarded Leen $14,385.99, plus $58.83 for interest and $108 for court costs.

Demopolis argues that because the amount of the judgment was in excess of the prayer for relief, the judgment in excess of the amount asked in the complaint is void. He, however, did not raise the issue when he moved to vacate the default judgment. He argued only that the whole judgment should be set aside. Demopolis could have argued in the alternative that the amount in excess of the prayer should have been set aside. Because he did not raise the issue below, it will not be considered on appeal. *See Allison*, at 284.

We next decide whether the trial court erroneously made rulings that modified or changed the decision that already had been appealed.

"After review is accepted by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule, unless the appellate court limits or expands that authority as provided in rule 8.3." RAP 7.2(a). A trial court may impose sanctions, including reasonable attorney fees, for violating CR 11, the rule prohibiting the frivolous filing of pleadings, motions, or legal memoranda. CR 11.

Under RAP 7.2(e),

[t]he trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules . . . and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. . . .

If the trial court's determination of a postjudgment motion will change a decision then being reviewed by the appellate court, the trial court must receive permission of the appellate court before formal entry of the trial court decision. RAP 7.2(e).

■ Demopolis argues that the trial court's decision awarding Leen $6,398.83 based upon Demopolis's violation of CR 11 changed the decision being reviewed by this court. The award of attorney fees for violation of CR 11, however, was in addition to the attorney fees awarded by the default judgment. The decision clearly did not change

or modify the original judgment. The trial court, therefore, did not err when it entered the decision without the permission of this court.

Finally, we consider whether this court should award the attorney fees and costs incurred by Leen in responding to this appeal, including his pro se attorney fees.

Leen argues that he should be awarded attorney fees and costs pursuant to his contract with Demopolis and under RAP 18.9(a). Additionally, he argues that he should be compensated for his own time preparing for this appeal.

■ Leen's contract with Demopolis stated as follows: "Should collection efforts on any fees or costs due from Client be needed, Client agrees to pay all attorney fees and other collection costs incurred by Attorneys." That contractual provision logically encompasses fees incurred on appeal. *See Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 64, 442 P.2d 950 (1968); *Brust v. McDonald's Corp.*, 34 Wn. App. 199, 209, 660 P.2d 320 (1983). Leen properly requested fees and costs in his brief and stated that he will submit the appropriate affidavits to support his request. Leen, therefore, is entitled pursuant to his contract with Demopolis to attorney fees and costs on appeal.

Leen also argues that he is entitled to attorney fees and costs under RAP 18.9(a) which provides:

> The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who uses these rules for the purpose of delay or who fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply.

Because Leen is entitled to attorney fees and costs pursuant to the contract, this court need not award those amounts under RAP 18.9(a). Leen, however, also seems to be arguing that Demopolis should be required to pay an additional sum under RAP 18.9(a) as a penalty for his abuse of the appeals process. Leen relies upon *Rich*

*v. Starczewski*, 29 Wn. App. 244, 628 P.2d 831, *review denied*, 96 Wn.2d 1002 (1981).

In *Rich*, the court found that Starczewski had "substantially expanded the scope of litigation in [the] case beyond that necessary to permit adequate review of claimed trial error." *Rich*, at 247-48. Therefore, although the issue raised on appeal had some merit, the court imposed sanctions under RAP 18.9(a). Demopolis's actions on appeal have not been as egregious as those of Starczewski in the *Rich* case and do not warrant sanctions in addition to the award of attorney fees on appeal.

Finally, Leen argues that he should be compensated for his own time in responding to this appeal. The law in this area is not clear. *Ellis v. Cassidy*, 625 F.2d 227, 230 (9th Cir. 1980). Some courts have awarded attorney fees to lawyers who have represented themselves when the award would further the policy of discouraging frivolous or harassing litigation. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 54 L. Ed. 2d 648, 93 S. Ct. 694 (1978). Fees were awarded in *Winer v. Jonal Corp.*, 169 Mont. 247, 545 P.2d 1094 (1976), because the lawyers were required to take time from their practices to prepare and defend the suit, for which they suffered pecuniary losses. A Michigan court awarded fees because it acknowledged that legal services had been performed. *See Wells v. Whinery*, 34 Mich. App. 626, 192 N.W.2d 81 (1971).

In contrast, the court in *O'Connell v. Zimmerman*, 157 Cal. App. 2d 330, 321 P.2d 161 (1958) denied attorney fees because it found that the litigant had incurred no liability to pay attorney fees. An Illinois court held that it was against public policy to allow fees for an attorney pursuing his own cause. *See Garrett v. Peirce*, 74 Ill. App. 225 (1898). Generally, however, the reasoning upon which attorney fees have been denied to attorneys who litigate an action themselves is that no fees are allowed because no fees have been incurred. *See* Annot., *Right of Party*

*Who Is Attorney and Appears for Himself to Award of Attorney's Fees Against Opposing Party as Element of Costs*, 78 A.L.R.3d 1119 (1977).

The better reasoning supports an award of attorney fees to lawyers who represent themselves. As reasoned in the *Winer* case, lawyers who represent themselves must take time from their practices to prepare and appear as would any other lawyer. Furthermore, overall costs may be saved because lawyers who represent themselves are more likely to be familiar with the facts of their cases. As noted above, Leen properly requested attorney fees and costs in his brief, as required by RAP 18.1. Leen, therefore, should be awarded fees for his own time spent responding to this appeal.

The order of the trial court is affirmed.

GROSSE, C.J., and KENNEDY, J., concur.

After modification, further reconsideration denied October 2, 1991.

Review denied at 118 Wn.2d 1022 (1992).