# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JENNIFER PIUKKULA (n/k/a/<br>MACHOVSKY),<br><br>      Respondent,<br><br> and<br><br>DAVID GARY PIUKKULA,<br><br>      Appellant. | No. 54760-1-II<br><br><br>UNPUBLISHED OPINION |

  CRUSER, J. – David Gary Piukkula appeals the trial court order denying his CR 60 motion to vacate the default final dissolution decree and findings of fact and conclusions of law in the dissolution action brought by his former wife Jennifer Piukkula, and the trial court's orders granting Jennifer's motions to amend the default orders. He argues that the trial court should have vacated the "[d]efault [o]rder[s]" because (1) he was not properly served before the default orders were entered; (2) the default orders exceeded the scope of relief requested by Jennifer; (3) his CR 60(b)(1), (9), and (11) claims were timely; (4) the real property and personal property were not "fairly and equitably" divided; and (5) the trial court failed to conduct an adequate fact finding hearing before entering the default orders. Br. of Appellant at 1, 4. David also argues that (6) the trial court erred when it granted Jennifer's motions to amend. These arguments fail. Accordingly, we affirm the trial court and deny both parties' requests for attorney fees and costs.

FACTS

I. JENNIFER'S PETITION FOR DISSOLUTION, MOTION FOR DEFAULT, AND DEFAULT ORDERS

David and Jennifer[1] were married in 2008. On May 5, 2017, Jennifer filed a petition for dissolution.

In her petition, Jennifer asked that the trial court "divide the real property fairly (equitably) as the court decides." Clerk's Papers (CP) at 3. As to the personal property, with the exception of a potential award in an ongoing lawsuit that Jennifer asked the court to characterize as community property, the petition stated that "[a]ll other personal property has been divided fairly by agreement of the parties." *Id.* at 4. Jennifer also asked the court to divide the liabilities "fairly (equitably) as the court decides." *Id.* Additionally, Jennifer requested that the trial court enter a parenting plan and child support order.

Shortly after filing the petition, Jennifer filed a proof of personal service from Jullee Nations, stating that Nations had served David by "giving the documents directly to [him]" on May 6. *Id.* at 6. The proof of service stated that Nations had served both the petition and a summons.

On June 15, Jennifer moved for default, asking the trial court to approve the final orders in the case without David's participation because he had not filed a notice of appearance or appeared in the case in any way. On June 26, the trial court issued a default order finding that David had defaulted by failing to respond to the summons and petition.

---

[1] We refer to both Jennifer and David by their first names for clarity.

On August 21, following a hearing at which only Jennifer and her counsel appeared, the trial court issued written findings of fact and conclusions of law. These findings of fact and conclusions of law included a finding that David was served in person on May 6, 2017.

The findings also addressed the real property, the community and separate personal property, and debts. Finding of fact 8 stated that "[t]he spouses' real property is listed below," and then, without describing the property, stated "[t]he division of real property described in the final order is fair (just and equitable)." *Id.* at 46. Findings 9 through 12 also stated that the division of the community and separate personal property and debts "described in the final order is fair (just and equitable)." *Id.* at 46-47.

The trial court also entered the final divorce order (decree), a parenting plan, a child support schedule worksheet, and a child support order.

Section 2 of the final decree stated:

**2.      Summary of Real Property Judgment**

*Summarize any real property judgment from section 7 in the table below.*

|  |  | **Real Property** |  |
| --- | --- | --- | --- |
| **Grantor's name** (*person giving property*) | **Grantee's name** (*person getting property*) | Assessor's property tax parcel or account number | Legal description of property awarded . . . . |
| David Piukkula | Jennifer Piukkula (Machovsky) | [Parcel number] | [Legal description] |

*Id.* at 50. Section 7 provided, in full:

**7.      Real Property** (*summarized in section 2 above*)
        The real property is divided as explained below:
[Blank]

*Id.* at 51.

Sections 8 and 9 of the final decree, which addressed Jennifer's and David's personal property, stated that each party was awarded the personal property that they currently had or controlled as their separate property and that no transfer of property was required.[2] But these sections also noted that Jennifer was "awarded one-half of the net proceeds regarding [David's] personal injury claim which arose during the marriage." *Id.* Sections 10 and 11 required David to pay half of Jennifer's student loan debt,[3] but otherwise required each party to pay any debts in their own name and their own debts since the date of separation.

## II. DAVID'S SEPARATE PARTITION ACTION, JENNIFER'S MOTIONS TO AMEND, AND DAVID'S MOTION TO VACATE

### A. DAVID'S SEPARATE PARTITION ACTION

More than two years later, on September 9, 2019, David filed a new complaint under a separate cause number seeking partition of the real property.[4] David alleged that the real property was a community asset that was not distributed by the court in the final decree and that Jennifer's divorce petition did not request any "specific division of the real property." *Id.* at 131. David asserted that partition action was "a means of adjudicating rights in real property which were

---

[2] The final decree does include a money judgment of $920 against David. This judgment appears to be from the child support order, which ordered David to pay Jennifer $920 for past due medical support.

[3] To the extent that David attempts to challenge the division of Jennifer's student loans, he does so only in his reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

[4] This action seems to have been filed in response to Jennifer selling or seeking to sell the real property.

undistributed in the" final decree and asked the court to partition the real property by sale. *Id.* at 130.

B. JENNIFER'S MOTIONS TO AMEND

On September 11, Jennifer filed a motion to amend the August 21, 2017 final decree. Jennifer asserted that although the final decree had listed the real property as being awarded to her as the "grantee," the final decree failed to "specifically provide that the real property was to be awarded to [her]" in Section 7. *Id.* at 81. That same day, the trial court entered an amended decree stating in Section 7 that "[t]he Real Property described in Section 2 above is awarded to [Jennifer]." *Id.* at 83. David's counsel filed a notice of appearance in the dissolution action the next day.

On September 17, Jennifer filed a CR 60(a) motion to amend paragraph 8 of the August 21, 2017 findings of fact and conclusions of law, asserting that the trial court's failure to identify the real property as being awarded to her in that finding was a clerical error. That same day, the trial court issued an order ordering David to appear to show cause why the court should not issue the order correcting the August 21, 2017 findings of fact and conclusions of law.

C. DAVID'S MOTION TO VACATE AND DECLARATION

On September 27, David filed a motion seeking to "1) [v]acate amended decree; [2]) [d]eny amendment to findings, [and] 3) declare partition as proper remedy." *Id.* at 110. In this motion, David argued that Jennifer's motions to amend the August 21, 2017 final decree and findings of

fact and conclusions of law were untimely. He asserted that because under CR 55(b)(2)[5] the entry of findings was a prerequisite for the entry of the final decree when there was a default and there were no findings regarding the real property, pensions, or tax return, the final decree was invalid. David also asserted that the proper way to resolve the disposition of the real property was through the motion for partition that he had filed and by modifying the final decree under RCW 26.09.170(1).[6] [7]

Although David asserted in the motion that he had not been served with the summons or with the "parenting plan, temporary orders, restraints, [and] worksheets" that Jennifer later filed and that the final decree and findings did not address the real property, the parties' pensions, or a 2016 tax return, he did not argue that the original decree and findings were void for lack of service. *Id.* at 111. Instead, he asserted that he was "also in the process of filing for declaratory relief as to the pensions and tax return and finally a motion to set aside the default and subsequent orders," stating that at this time "the only issue before the court right now is the real estate." *Id.*

---

[5] CR 55(b) addresses the entry of default judgments. CR 55(b)(2) provides:
> *When Amount Uncertain.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. Findings of fact and conclusions of law are required under this subsection.

[6] RCW 26.09.170 has been amended since this action commenced. *See* LAWS OF 2020, ch. 227, § 13; LAWS OF 2019, ch. 275, § 2. Because these amendments do not affect our analysis we cite to the current version of the statute.

[7] RCW 26.09.170 provides for the modification of a decree for maintenance or support, property disposition, and the termination of maintenance and child support obligations. As to property distribution, the statute states, "The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." RCW 26.09.170(1).

David also filed a declaration in response to the order to show cause. In his declaration, David stated that the real property was community property and that he had signed a quitclaim deed to Jennifer only because it was necessary to get the loan on the property since his credit score was poor. David further asserted that the funds from their joint account were used to make the house payments and that he performed considerable maintenance and repair on the home and property. As to the service issue, he stated that he was served with only the petition for divorce, not the summons.

David also stated that he was arrested on allegations of child molestation on August 16, 2017. David stated that he was eventually released on bail and was acquitted of this charge and that he did not learn that the final decree had been entered on August 21, 2017, until after his acquittal. He asserted that at that time he was "financially destitute" and had no way to pay for representation in the dissolution action. *Id.* at 145. At the end of his declaration, in contrast to what the motion stated, David requested that the trial court "set aside" the default order and "grant a new trial because [he] was not properly served as required by law," having "only received a vague Petition and no Summons." *Id.* at 146.

D. JENNIFER'S DECLARATIONS

In response to David's filings, Jennifer filed a declaration from Nations stating that she had served David with the summons and the petition for dissolution. Nations also provided a proof of service noting that both the petition for divorce and the summons had been served.

Jennifer also filed a declaration from her brother, Joe Piksa, regarding the real property stating that he had sold the home to Jennifer based on an agreement that predated Jennifer's relationship with David.

7

Additionally, Jennifer filed her own declaration in which she stated that David was arrested on August 25, 2017, and had been incarcerated through November 2017. She also addressed the purchase of the real estate from her brother and attached a copy of the quitclaim deed.

E. OCTOBER 17, 2019 HEARING

On October 17, the trial court held a hearing to address the various issues the parties had raised. The trial court stated that David had raised two issues, (1) whether he had been properly served, and (2) whether the real property at issue was community property or Jennifer's separate property. The court ordered an evidentiary hearing to address the service issue and to allow the parties to present evidence related to whether community or separate funds paid for the real property. This hearing was set for January 28, 2020.

F. JANUARY 28, 2020 HEARING

At the January 28, 2020 hearing, David's counsel agreed that David was asserting that he was not properly served in this case. But, after the trial court discussed the burden of proof and presumptions related to lack of service claims and asked David's counsel about the timeliness of David's "motions to set aside judgments or decrees," counsel responded that David was not asking to set aside the final decree, stating that "[t]he decree [was] fine." Verbatim Report of Proceedings (VRP) (Jan. 28, 2020) at 9. David's counsel instead argued that the decree had failed to divide the real property, the parties' "retirements," or "the tax returns," and that the trial court had not complied with CR 55(b)(2) before entering the judgment because the amounts in the default judgment were uncertain. *Id.* The trial court rejected this argument, stating that CR 55(b)(2) related to entry of judgment of damages and not to divorce decrees.

The trial court then commented that Section 2 of the August 21, 2017 final decree stated that the real property was awarded to Jennifer and identified the property. David's counsel responded that Section 2 alone was just a summary and had no "operative language." *Id.* at 11. David's counsel directed the court to the absence of any description of the property division in Section 7 of the decree. The trial court ultimately stated that the quitclaim deed divested David of any interest in the real property and that the final decree was consistent with that.

The trial court then turned to David's delay in challenging the prior orders. When the court asked David's counsel how they "get past Civil Rule 60 on that," David's counsel responded, "Again, we are not trying to set aside the divorce decree." *Id.* at 17. The trial court disagreed with counsel's characterization of David's motion, stating, "Sure you are." *Id.* David's counsel then argued that the decree was "remiss in certain aspects" and that the court made no findings regarding "all properties before the Court, . . . both separate and community for an equitable distribution." *Id.* The trial court responded that all property had been distributed and asked David's counsel what was left to address.

The trial court and David's counsel then discussed the effect of the quitclaim deed on any fair and equitable determination. David's counsel tried to argue that the court should consider David's contributions towards the property, that the property was acquired after marriage, and that there was an agreement that he quitclaim the property only to obtain the mortgage. The court responded that there was no evidence supporting David's claim that the quitclaim deed was merely to obtain financing and that there was no evidence to support David's claim there was any agreement of this kind.

9

The trial court again mentioned CR 60. The trial court commented that although David's counsel had stated that David was not moving to set aside the decree, counsel's argument that the service was defective clearly presented that argument. The court then asked if the "motion to set aside the decree" was untimely under CR 60 and asked for clarification of what section of CR 60 David was arguing applied. *Id.* at 21. Counsel responded, "Well, a mistake, inadvertence, surprise, excusable neglect." *Id.* The trial court replied that motions under CR 60(b)(1), based on mistake, inadvertence, and excusable neglect, must be made within a reasonable time not more than a year after the entry of the order in question. Defense counsel then referred the court to CR 60(b)(11), "any other reason justifying relief," without expressly stating what the other reason was. *Id.* at 22.

The trial court responded:

> You don't qualify for [CR 60(b)(11)]. So your client had a year to bring a motion and he didn't do it. It was in excess of two years before he brought the motion, so *under Civil Rule 60, his motion is time-barred. There certainly has not been clear and convincing evidence presented regarding the affidavit of service.* All we have is an affidavit from your client saying all he got was the summons and not a copy of the petition. And there is an affidavit from the process server stating that she clearly remembers serving both documents upon your client and she said where and when and who else was present.
>
> An affidavit -- an affidavit from someone who has been served with documents stating I didn't get the documents is never going to satisfy the clear and convincing evidence test.

*Id.* at 22-23 (emphasis added).

David's counsel then argued that CR 60(b)(9)[8] applied because David's incarceration was an unavoidable casualty or misfortune since he had been falsely accused of a crime and

---

[8] CR 60(b)(9) allows for relief from judgment when there has been an "[u]navoidable casualty or misinformation preventing the party from prosecuting or defending."

incarcerated. Again, the trial court disagreed, noting that David had been out of custody for some time before he finally filed his CR 60 motion in September 2019.

The trial court made the following oral ruling:

> So [David's] motion to vacate the amended decree, to deny amendment to the findings and to declare partition as a proper remedy at least to the extent it is set forth in the motion under [the dissolution action], those motions are denied.
>
> [Jennifer's] motion to amend is, in my opinion, a correction of a clerical error and can be -- can be done by the Court on its own motion, but I'm going to allow [Jennifer] to amend the decree.

*Id.* at 25.

The trial court then issued an order granting Jennifer's CR 60(a) motion to correct the findings of fact, denying David's motion to vacate the amended decree, and denying David's motion to declare partition is the proper remedy "on the basis that all property was divided by the court in this action." CP at 201. The court also entered the amended findings and conclusions. David appeals.

## ANALYSIS

David argues that the trial court should have vacated the "[d]efault [o]rder[s]" because (1) he was not properly served before the default orders were entered; (2) the default orders exceeded the scope of relief requested by Jennifer; (3) his CR 60(b)(1), (9), and (11) claims were timely; (4) the real property and personal property was not "fairly and equitably" divided; and (5) the trial court failed to conduct an adequate fact finding hearing before entering the default orders. Br. of Appellant at 1, 6-7. David also argues that (6) the trial court erred when it granted Jennifer's motions to amend. These arguments fail.

11

## I. CR 60(b)(5) ISSUES

### A. SERVICE

David first argues that the trial court erred when it refused to vacate the "[d]efault [o]rder" or "default [d]ecree" for lack of service. Br. of Appellant at 1-2. He argues that they are void for lack of service because he was never served with the summons.[9] We disagree.[10]

CR 60(b)(5) allows the trial court to relieve a party from a final judgment if the judgment is void. A default judgment is void if the court lacked personal jurisdiction over that party. *Ahten v. Barnes*, 158 Wn. App. 343, 349, 242 P.3d 35 (2010). A CR 60 motion asserting that the order or any portion of the order being challenged is void can be brought at any time. *Id.* at 350. We review de novo the trial court's denial of a motion to vacate a final order for lack of jurisdiction. *Id.*

If service of the summons and complaint is improper, the trial court does not have personal jurisdiction over a party. *Id.* at 349. "A facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and

---

[9] David also suggests that the service was improper because he was served by "[a] [n]on-registered process server." Br. of Appellant at 17. But "any person over 18 years of age who is competent to be a witness in the action, other than a party" may serve process, and there is nothing in the record suggesting that Nations was not competent to be a witness or that she was a party to this action. CR 4(c).

[10] Jennifer responds that even if service was improper, David waived this challenge because he expressly stated that he was not challenging the default decree and he failed to raise the defense of insufficient service of process in his September 27, 2019 motion. Although David's counsel repeatedly stated that David was not challenging the default decree and David's motion did not raise this argument, we address this argument because the trial court considered the service-related challenge as a challenge to the default orders and David does not now challenge that characterization of his motion.

12

convincing evidence that the service was irregular." *Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997).

When a challenge to an affidavit of service is supported by controverting affidavits that present an issue of fact and the resolution of that issue of fact requires a determination of witness credibility, the trial court may abuse its discretion by failing to hold an evidentiary hearing. *Woodruff v. Spence*, 76 Wn. App. 207, 210, 883 P.2d 936 (1994). And, as Jennifer notes, "[c]onflicting affidavits, without live testimony, will not satisfy by clear and convincing evidence that service was improper." Br. of Resp't at 10 (citing *Leen v. Demopolis*, 62 Wn. App. 473, 479, 815 P.2d 269 (1991) (a respondent's declaration stating that service was improper does not satisfy clear and convincing evidence standard when the affidavit of service states that a respondent was personally served with the summons and complaint)).

Here, the trial court held an evidentiary hearing to resolve the service issue. But the only evidence regarding service that was presented was Nations' and David's declarations. Thus, the trial court could consider only the competing declarations, and the court concluded that David's declaration alone was not clear and convincing evidence that the service was improper. We agree.

Nations' declaration stated that she had served David with both the petition and the summons. And the copy of the proof of service attached to Nations' declaration stated that she had served David with both the petition and the summons. In contrast, in his declaration, David asserted that he had only been served with the petition. Given the proof of service, Nations' declaration, and the presumption in favor of validity of service, the trial court did not err when it concluded that David's declaration alone was not sufficient to show by clear and convincing evidence that he was not served with both the summons and the petition. *Leen*, 62 Wn. App. at 479.

David also argues that service was not adequate because he was never served with the subsequent pleadings, despite Jennifer's petition stating that she would file the proposed parenting plan and other pleadings at a later date. But when a court has determined that a defendant is in default, notice of subsequent proceedings is not required, so this argument is not persuasive. RCW 4.28.210.

David also notes that the trial court incorrectly asserted that David claimed to have been served with only the summons rather than the petition. The trial court did incorrectly state that David had claimed to have been served with only the summons, which was inconsistent with David's claim in this declaration that he had been served with only the petition. But because Jennifer was required to serve David with both the summons and the petition and David does not overcome the presumption that he was served with both, this error does not affect the resolution of this appeal.

B. SCOPE OF RELIEF

David further argues that the trial court lacked jurisdiction because the relief granted in the decree did "not precisely mirror the petition or complaint." Br. of Appellant at 2. We disagree.[11]

"In entering a default judgment, a court may not grant relief in excess of or substantially different from that described in the complaint." *In re Marriage of Leslie*, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989). Under CR 60(b)(5), a trial court may vacate a default decree as void to the extent

---

[11] David also argues that the trial court's August 21, 2017 decree was incorrect, and arguably exceeded the scope of relief Jennifer requested, because Section 1 of the decree states there was no money judgment ordered, but Section 6 of the decree awarded Jennifer $920. The $920 judgment appears to be from the child support order, which ordered David to pay Jennifer $920 for past due medical support. David did not raise this issue in his motion to vacate or before the trial court, so we do not address it. RAP 2.5(a).

the property division in the decree is "different in kind from or exceed[s] in amount that prayed for in the" petition. CR 54(c); *In re Marriage of Johnson*, 107 Wn. App. 500, 503-04, 27 P.3d 654 (2001). In determining whether the decree is void, the key issue is whether the petition provided the defendant "'sufficient notice to make an intelligent decision to appear or default.'" *Johnson*, 107 Wn. App. at 504 (quoting *Conner v. Universal Utils.*, 105 Wn.2d 168, 172, 712 P.2d 849 (1986)).

In her petition, Jennifer requested that the trial court divide all real property and all personal property and debts fairly and equitably. Thus, David was aware that Jennifer was seeking an equitable division of all of their real property and all of their personal property and debts. This was sufficient to put David on notice that he needed to appear in order to have any input in that division. And the trial court's decree of dissolution and findings of fact stating that the division of the real and personal property and debts was "fair (just and equitable)," provided the exact relief requested. CP at 46-47, 51-52.

David also appears to argue that the decree did not mirror the relief requested in the petition because it failed to allocate the real property. He contends that the decree did not allocate the real property because, although Section 2 of the decree described the real property and stated that he was the grantor and Jennifer was the grantee, Section 7 of the decree did not explain how the property was allocated. We disagree.

Even though Section 7 of the decree was blank, Section 2 was not just a description of the property. Instead, Section 2 was a summary of the "real property *judgment*." *Id.* at 50 (emphasis added). And by stating that the judgment grantee, or the "person getting property," was Jennifer alone, the decree expressly established that all of the real property was to be in Jennifer's name

and that no part of it was in David's name. *Id.* Thus, David does not show that the decree failed to award the property and was, therefore, different than the relief Jennifer requested in her petition.[12]

David also appears to assert that the fact Jennifer had to move to amend the decree and the trial court granted Jennifer's motion to amend demonstrates that the default decree failed to allocate the real property. Although the trial court may have amended the decree to make the division of property more apparent, as discussed above, Section 2 of the decree still established that the real property was awarded to Jennifer.

David further contends that the relief granted did not mirror the petition because the decree did not specifically "address the allocation of the 2016 Tax Refund or the parties' pensions."[13] Br. of Appellant at 6. Although the August 21, 2017 final decree does not specifically mention pensions or tax refunds, it states that each party was awarded "[t]he personal property that [he or she] now has or controls" as their separate property, and the record does not show that the parties' pensions or the tax return were not among the property controlled by each party. CP at 51-52.

Because the decree of dissolution and the findings of fact provided the relief requested, a fair and equitable division of all real property, personal property, and debts, this argument fails.

---

[12] David also asserts that the trial court failed rule on whether partition of the real property was the proper remedy. David is incorrect. The trial court denied David's motion to declare that partition was the proper remedy stating that the motion was denied because "all property was divided by the court in this action." CP at 201. And because we hold that the decree allocated the real property, the trial court was correct and there was no real property remaining to divide by partition.

[13] In his reply, David also asserts for the first time that the trial court improperly assessed the children's uninsured medical bills against him and that the parenting plan and child support order were based on incorrect information. We do not address issues raised for the first time in a responsive brief. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

## II. OTHER CR 60 GROUNDS UNTIMELY

David next argues that the trial court erred in denying his motion to vacate the default orders under CR 60(b)(1), (9), and (11).[14] He contends that the trial court erred when it found that his delay in filing his motion was not reasonable or excusable.[15] Again, we disagree.[16]

We review a trial court's decision on a motion brought under CR 60(b)(1), (9), and (11) for abuse of discretion. *Union Bank, N.A. v. Vanderhoek Assocs., LLC*, 191 Wn. App. 836, 842, 365 P.3d 223 (2015). "A trial court abuses its discretion if its decision is based on untenable grounds or is [made] for untenable reasons." *Id.*

Motions to vacate under CR 60(b)(1) must be made within a year. CR 60(b). Here, the final orders were entered August 21, 2017, and David did not file his CR 60 motion until late September

---

[14] David also argues that the trial court erred in denying his motion to vacate the default orders under CR 60(b)(4), for fraud or misrepresentation based on his allegations that the criminal charges against him were fraudulent and his claims that Jennifer failed to provide him with the proposed parenting plan or child support order she referred to in the petition. But David did not argue he was entitled to relief under CR 60(b)(4) in the trial court, so we do not consider this subsection. RAP 2.5(a). Furthermore, even if we were to consider this argument, it would also fail because a motion under CR 60(b)(4) would be untimely for the same reasons the motion under subsections CR 60(1), (9), and (11) are untimely.

[15] It is unclear from the record whether the trial court actually denied the motion based on CR 60(b)(9) or (11) as time barred. But because we can affirm the trial court's denial of these motions on any ground supported by the record, we consider whether the CR 60(b)(9) and (11) motions were untimely. *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003).

[16] David also argues that since his motion was timely, he was entitled to relief under CR 60(b)(1), (4), (9), and (11). Because we hold that the trial court did not err when it found that his motion was not timely, we do not address this argument.

2019, more than two years later. Thus, the trial court did not abuse its discretion in concluding that the motion under CR 60(b)(1) was untimely.[17]

Motions brought under CR 60(b) (9) and (11) must be made "within a reasonable time . . . after "the judgment, order, or proceeding was entered or taken." CR 60(b). "What constitutes a reasonable time depends on the facts and circumstances of each case." *Luckett v. Boeing Co.*, 98 Wn. App. 307, 312, 989 P.2d 1144 (1999).

When determining whether the moving party met the reasonable time requirement, the trial court first measures the "critical period." *Id.* The critical period is "the period between when the moving party became aware of the judgment and the filing of the motion." *Id.* The major considerations in determining the timeliness of the motion are (1) whether the delay during the critical period prejudiced the nonmoving party and (2) whether the moving party has good reasons for failing to bring the motion earlier. *Id.*

As to the first consideration, the record does not contain any information regarding whether the delay would prejudice Jennifer, and David does not now argue that there would be no prejudice to Jennifer. So that factor is, at best, neutral. As to the second consideration, the record does not show that David had good reasons for failing to move to vacate sooner. Thus, this second consideration weighs strongly against David.

In his declaration, David asserted that (1) he was arrested August 16, 2017 and was in custody for two and a half months; (2) the final decree and findings of fact and conclusions of law

---

[17] David argues that the default findings of fact were not appropriate because there was no testimony presented at the default hearing and the trial court just signed the papers presented by Jennifer based on her counsel's misleading assertion that they represented what was in the pleadings. This argument falls under CR 60(b)(1). Because we hold that David's CR 60(b)(1) motion was untimely, we do not further address this argument.

were entered August 21, 2017, while he was in custody; (3) he was acquitted after a jury trial; (4) he did not learn of the August 21, 2017 order until after his acquittal; and (5) following his acquittal he was "financially destitute" because of the criminal proceedings and resulting loss of his job and "had no means to access representation." CP at 145. The record also shows that David filed his separate partition action on September 9, 2019, and his CR 60 motion on September 27. David's declaration does not, however, state exactly when he was acquitted of the criminal charges or exactly when he learned of the August 21, 2017 order, and there is nothing in the record on appeal establishing these dates.[18]

The evidence before the trial court did not include the exact date that David discovered that the August 21, 2017 orders were entered. The evidence showed only that David was in jail until November 2017; that he did not discover the August 21, 2017 order until after that date; and that he did not file his CR 60 motion until late September 2019, 22 months later.[19] Although he asserted that he was emotionally devastated and financially unable to obtain counsel after his acquittal, he did not explain why he was unable to attempt to challenge the default orders pro se after he learned of the August 21, 2017 order. And he was able to obtain counsel and file a separate partition action more than two weeks before he filed his motion to vacate, suggesting that the delay in filing the motion to vacate was not solely due to his ability to obtain counsel. Based on these facts, we cannot

---

[18] Although David's declaration does not state when he was acquitted, David states in his opening brief that this occurred on January 25, 2018. But the trial court would not have been aware of that fact.

[19] We note that even if David had presented the trial court with evidence that he did not know of the August 21, 2017 orders until after January 25, 2018, he still failed to file anything in the dissolution action until 20 months later, and not until after he first obtained counsel to file the separate partition action.

say that the trial court abused its discretion in finding that the CR 60(b)(1), (9), and (11) motions were untimely.[20]

### III. ADDITIONAL CHALLENGES TO THE DIVISION OF PROPERTY

David also argues that (1) the real property was not "fairly and equitably" divided because the August 21, 2017 decree awarded all of the real property to Jennifer when the property, or any increase in its value during the marriage, was community property and he contributed to the mortgage and maintenance of the home; (2) the trial court improperly divided all of his personal injury settlement without limiting the division to the net proceeds or considering that the portion of the award for pain and suffering was his separate property; and (3) the trial court failed to conduct an adequate fact finding hearing before entering the default orders. Br. of Appellant at 4.

The first two arguments would require us to examine the trial court's findings that its division of the property was just and equitable. But "[a]n appeal from denial of a CR 60(b) motion is limited to the propriety of the denial [and] not the impropriety of the underlying judgment." *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). Thus, we decline to address these arguments.

As to the third argument, a failure to conduct an adequate hearing before issuing a default order, would fall under CR 60(b)(1), "an irregularity in obtaining a judgment or order." And, as discussed above, any CR 60(b)(1) motion was untimely.

---

[20] David compares his delay to Jennifer's delay in bringing her motions to correct the decree and the findings. But Jennifer brought her motions under CR 60(a), and was not subject to the same time limitations. *Compare* CR 60(a) *with* CR 60(b).

### IV. JENNIFER'S MOTIONS

David also appears to argue that the trial court erred when it granted Jennifer's motions to amend. We disagree.

David asserts that the trial court granted Jennifer's motions to amend despite David not receiving notice. But David was not entitled to service of the first motion to modify because he had never appeared in the case. RCW 4.28.210. And David appeared in court to address Jennifer's second motion to modify and never asserted that he had not been served with that motion.

David also argues that Jennifer's motion or motions were untimely. As discussed above, these motions were brought under CR 60(a), so the time bar does not apply.

And David further argues that Jennifer's counsel intentionally misled the court. But David does not say how Jennifer's counsel misled the court. At best, he may be asserting that counsel's assertion that the trial court had divided the real property was erroneous. But, as discussed above, the default decree clearly identified the real property as having been awarded to Jennifer. Accordingly, David does not show that the trial court erred when it granted Jennifer's motions to amend.

### V. APPELLATE FEES AND COSTS

Both parties request fees and costs on appeal. Neither party has filed an affidavit of financial need as required under RAP 18.1(c). Thus, we decline to award fees and costs to either party.

We affirm the trial court and deny both parties' requests for attorney fees and costs.

No. 54760-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

PRICE, J.